UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY B. CAGE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:16-cv-02983-MJD-TWP ) |
| NANCY A. BERRYHILL, | ) ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Anthony B. Cage ("Cage") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Commissioner's decision is **REVERSED AND REMANDED**.

**I. Background**

Cage filed applications for DIB and SSI on June 28, 2013, alleging an onset of disability date of May 8, 2012. [Dkt. 14-2 at 16.] Cage alleges disability due to diabetes, peripheral neuropathy, left shoulder dysfunction, obesity, blindness in the left eye, and depression.[1] [Dkt. 14-2 at 18.] Cage's application was initially denied on September 13, 2013, and denied again on

---

[1] Cage and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 17 and Dkt. 19.] Because these facts involve Cage's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

December 11, 2013, upon reconsideration.  [Dkt. 14-2 at 16.]  Cage timely filed a written request for a hearing, which was held on April 17, 2015, before Administrative Law Judge Kimberly Sorg-Graves. ("ALJ").  *Id*.  The ALJ issued a decision on June 23, 2015, again denying Cage's applications for SSI.  [Dkt. 14-2 at 13.]  On September 8, 2016, the Appeals Council denied Cage's request for review, making the ALJ's decision the final decision for purposes of judicial review.  [Dkt. 14-2 at 1.]  Cage timely filed his Complaint with this Court on November 2, 2016, which Complaint is now before the Court.

**II.     Legal Standard**

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform her

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Cage has not engaged in substantial gainful activity since May 8, 2012, the alleged onset date. [Dkt. 14-2 at 18.] At step two, the ALJ determined that Cage "has the following severe impairments: diabetes mellitus, peripheral neuropathy, left shoulder dysfunction, obesity, blindness in the left eye, and depression." *Id.* However, at step three, the ALJ found that Cage does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 14-2 at 19.] In making this determination, the ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 11.14 (Peripheral Neuropathy), 2.02 (Loss of Visual Acuity), and 12.04 (Depression). *Id.*

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). He concluded that Plaintiff had the RFC to perform a range of light work except:

> [C]laimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours; and stand and/or walk 4 of 8 hours. There should be no more than occasional overhead reaching with the left upper extremity and no work that requires binocular vision. The claimant is further limited to simple, repetitive unskilled tasks.

In finding these limitations, the ALJ considered Cage's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 14-2 at 23.] The ALJ then acknowledged that the evidence presented could reasonably show that Cage suffers from the symptoms he alleges, but she found his statements "not entirely credible." [Dkt. 14-2 at 32.] At step four, the ALJ concluded the Plaintiff is unable to perform any past relevant work. *Id.* The ALJ thus proceeded to step five, at which time she received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform unskilled light occupations such as a small parts assembler, electrical accessories assembler, and inspector hand

4

packager. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 14-2 at 33.]

## IV. Discussion

Cage asserts the ALJ committed two errors that require remand: (1) the ALJ failed to properly address Cage's moderate limitations in maintaining concentration, persistence, or pace in the RFC and hypothetical to the VE; and (2) the ALJ inadequately analyzed Cage's impairments under Listing 11.14 and should have obtained a medical opinion as to equivalency to the listing.

### A. Residual Functional Capacity

Cage argues that the ALJ erred by failing to accommodate Cage's limitations in concentration, persistence, or pace in Cage's RFC and the hypothetical questions posed to the VE. As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *See*, *e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615 (7th Cir. 2010); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). This includes any deficiencies the claimant may have in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

In this case, the ALJ specifically found at *step three* that Cage has moderate difficulties with concentration, persistence, or pace ("CPP"). In some cases, after finding moderate limitations with CPP at step three, the ALJ will then neglect to address those limitations in the RFC, often prompting remand pursuant to *O'Connor-Spinner* and its progeny. *See, e.g.*, *Stewart*, 561 F.3d 679; *Lanigan v. Berryhill*, 2017 WL 3172428 (7th Cir. July 26, 2017); *Ison v. Colvin*, 2017 WL 2437289 (S.D. Ind. May 12, 2017); *Curley v. Berryhill*, 2017 WL 2427711 (S.D. Ind. May 12, 2017).

5

But here, the ALJ took the unusual step to clarify how her step three finding impacted the RFC determination by stating:

> Thus, I find no functional consequence of the claimant's limitation in this area beyond an inability to sustain detailed or complex work processes, and, in the case at hand, a restriction to simple repetitive tasks encompasses that restriction. I am required by the Administration's regulations to categorize the claimant's level of mental functioning using different terms at steps three and four of the sequential evaluation, but I do not find that the claimant's "moderate" deficiency at step three represents a separate functional limitation, or one that is different in degree, from the restriction to simple, repetitive tasks that I have assessed below, at step four. Cf. *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009).

[Dkt. 14-2 at 22.] The ALJ then devised an RFC limiting Cage to "simple, repetitive, unskilled tasks." [Dkt. 14-2 at 24.]

With the above quoted language, the ALJ attempts to distinguish her findings from those in *Stewart*, where the ALJ addressed CPP deficiencies by limiting the claimant to "simple, routine tasks that do not require constant interactions with coworkers or the general public." *Stewart*, 561 F.3d at 685. The Seventh Circuit remanded that case, noting that "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Id.* But the ALJ's effort here to avoid the fate of *Stewart* falls short.

The Seventh Circuit has repeatedly rejected – most recently in *Lanigan v. Berryhill* – the notion that limiting a claimant to "simple, routine, and repetitive tasks" adequately addresses CPP deficiencies. 2017 WL 3172428, at *6 (7th Cir. July 26, 2017). "These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520.We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Id. See*

6

also *Yurt*, 758 F.3d at 858–59; *Stewart*, 561 F.3d at 685 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008).

Looking again at the ALJ's language above, this case likely would have a different outcome if the ALJ ended the analysis of her step three finding of CPP deficiencies after this partial sentence: "I do not find that the claimant's 'moderate' deficiency at step three represents a separate functional limitation." That language draws a proper distinction between the step three finding and functional limitations that must be included RFC. But the ALJ's analysis continued: "I do not find that the claimant's 'moderate' deficiency at step three represents a separate functional limitation, **or one that is different in degree, from the restriction to simple, repetitive tasks that I have assessed below, at step four**." [Dkt. 14-2 at 22.] With this clause, the ALJ becomes caught in the cross hairs of the Seventh Circuit's admonition against using unskilled work to address CPP deficiencies.[3]

The Commissioner attempts to side-step Cage's *O'Connor-Spinner* argument by asserting that the ALJ was not required to use any particular language in the RFC. [Dkt. 19 at 17.] On this point, the Commissioner is correct. Unfortunately, the Seventh Circuit did not provide clear guidance in *O'Connor-Spinner*, *Stewart*, *Yurt*, or *Lanigan* as to what language the ALJ **should** include to satisfactorily account for CPP deficiencies in the RFC. But the court **did** provide clear guidance as to what language the ALJ **should not** use, and that is precisely the language used by the ALJ here. Because the ALJ's limitation to "simple, repetitive, unskilled

---

[3] In fact, the ALJ here even uses the term "unskilled tasks" in the RFC, limiting Cage to "simple, repetitive, unskilled tasks." [Dkt. 14-2 at 23.]

7

tasks" in the RFC is insufficient to account for Cage's moderate limitations in concentration, persistence or pace, the Court must remand the ALJ's decision.

### B. Listing 11.14 (Peripheral Neuropathy)

Cage also argues the ALJ failed to adequately explain why Cage's impairments do not meet Listing 11.14. Cage further asserts the ALJ should have obtained a medical opinion as to medical equivalency for that listing. An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment. SSR 96–6p. In some instances, this requires the ALJ to hear additional evidence from a medical examiner. *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (noting that the ALJ incorrectly made medical conclusions instead of consulting a medical examiner). However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone. *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009).

Here, the ALJ relied upon the Disability Determination Transmittal Form completed by the state agency physicians in this case. These forms constitute expert medical evidence that ALJ's may properly rely upon to find that a claimant does not meet or medically equal a listing. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). Consequently, the Court does not find error with the ALJ's conclusion that Cage does not meet or equal Listing 11.14.

### V. Conclusion

The standard for review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but neither does it reweigh the evidence nor substitute its judgment for the ALJ's. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009). Where, as here, the ALJ did not build a logical bridge between the evidence in the record and the ALJ's conclusion, the Court must remand. As the Court cannot find a complete logical bridge in the ALJ's five-

step sequential analysis, the Commissioner's decision is vacated and **REMANDED** for further proceedings.

Dated: 28 AUG 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Debra G. Richards
UNITED STATES ATTORNEY'S OFFICE
debra.richards@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov